UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL ACADEMY OF ORAL MEDICINE & TOXICOLOGY, INC., an Oklahoma non-profit corporation; MOMS AGAINST MERCURY, INC., a North Carolina non-profit corporation; COMED, INC., a Delaware non-profit Corporation; DAMS, INC., a New Mexico non-profit corporation; AMY M. CARSON, guardian ad litem for KIT D. CARSON; REV. LISA SYKES, guardian ad litem for WESLEY SYKES; LINDA BROCATO; KRISTIN HOMME, PE, MPP, MPH; MICHAEL G. BURKE; HOLLIS HUGHES ROGER WALLER; KENNARD W. WELLONS; DAVID BARNES, DDS; PAULA KAVANAGH; ROBERTA VOSS; JOY CHMIELENSKI, RN;  DORICE A. MADRONERO; ERIC EDNEY; KAREN PALMER; and KAREN BURNS, <br><br>   *Plaintiffs,*<br>v.<br><br>FOOD AND DRUG ADMINISTRATION<br>10903 New Hampshire Avenue<br>Silver Spring, MD 20993;<br><br>MARGARET A. HAMBURG, M.D.,<br>Commissioner of Food and Drugs<br>U.S. Food and Drug Administration<br>10903 New Hampshire Avenue<br>Silver Spring, MD 20993;<br><br>  and<br><br>KATHLEEN SEBELIUS<br>Secretary of Health and Human Services<br>U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>   *Defendants.* | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, the International Academy of Oral Medicine & Toxicology, Inc., an Oklahoma non-profit corporation; Moms Against Mercury, Inc., a North Carolina non-profit corporation; CoMeD, Inc., a Delaware non-profit corporation; DAMS, Inc., a New Mexico non-profit corporation; Amy M. Carson, guardian ad litem for Kit D. Carson; Rev. Lisa Sykes, guardian ad litem for Wesley Sykes; Linda Brocato; Kristin Homme, PE, MPP, MPH; Michael G. Burke; Hollis Hughes; Roger Waller; Kennard W. Wellons; David Barnes, DDS; Paula Kavanagh; Roberta Voss; Joy Chmielenski, RN; Dorice A. Madronero; Eric Edney; Karen Palmer; and Karen Burns, for their claims against the Defendants, Food and Drug Administration ("FDA" or "the Agency"); the Commissioner of the U.S. Food and Drug Administration, Margaret A. Hamburg, M.D., ; and the Secretary of Health and Human Services, Kathleen Sebelius, allege and state as follows:

1. This is an action for declaratory and injunctive relief arising out of the failure of the FDA to respond within a reasonable time to five petitions for rulemaking and reconsideration requesting that FDA: (1) formally ban the use of dental amalgam as a dental restorative material pursuant to section 516 of the Medical Device Amendments of 1976 (21 U.S.C. § 360f) and 21 C.F.R. § 895, or in the alternative; (2) place encapsulated dental amalgam into Class III pursuant to section 513(3) of the Medical Device Amendments; (3) demonstrate proof of safety and effectiveness; (4) promulgate restrictions for the use of dental amalgam in certain individuals; and (5) require that an Environmental Impact Statement ("EIS") or at the least an Environmental Assessment ("EA") be prepared pursuant to 21 C.F.R. § 25.40.

2. Top scientists have repeatedly warned the FDA that mercury fillings constitute a dangerous and unsuitable restorative material. Two separate Scientific Advisory Panels

constituted by the FDA clearly stated that they could not support the notion of amalgam safety. FDA's own website wonders whether mercury fillings might be damaging the brains of fetuses. A new study now demonstrates that pre-natal exposure to mercury from maternal dental amalgams is associated with a substantially elevated risk of autism. It is time to disregard the political influences that are preventing the FDA from fulfilling its solemn duty to protect the public health. Safer alternatives with proven clinical track records already exist. Mercury fillings should be immediately banned as a dental restorative material.

3. On September 6-7, 2006, the FDA consulted a group of expert consultants in a joint meeting of the Dental Products Panel of the Medial Devices Advisory Committee of the Center for Devices and Radiological Health and the Peripheral and Central Nervous System Drugs Advisory Committee of the Center for Drug Evaluation and Research. Interested parties had raised concerns about the effects of using mercury as a component of dental amalgam devices. The Joint Committee reviewed and discussed peer-reviewed scientific literature on dental amalgam and mercury toxicity, including the FDA's own position statement on dental amalgam (the "White Paper"). In a vote, the Joint Panels rejected the FDA's White Paper and the proposition that amalgam safety had been demonstrated.

4. In December 2007, Plaintiffs Karen Palmer, Moms Against Mercury, and other Plaintiffs filed a lawsuit against the FDA Commissioner and others in a case styled, *Moms Against Mercury v. Eschenbach*, Case No. 1:07-CV002332-ESH (hereinafter the "Related Litigation"), seeking an order from the Court requiring the Defendants to remove from the marketplace all encapsulated mercury amalgam. Plaintiffs also requested that the FDA be ordered to classify mercury amalgam. [Complaint, Dkt. No. 1.] All Plaintiffs in the Related Litigation were represented by Attorneys Charles G. Brown and Robert E. Reeves.

5. The Complaint alleged that FDA was statutorily obligated by the Medical Device Amendments of 1976 to classify dental amalgam. Thirty-one-years later, FDA had still failed to comply with the Congressional mandate to classify all medical and dental devices. The Complaint set forth an astonishing history of FDA procrastination.

> Thirty-one years after Congress ordered all pre-amendment devices to be classified, 20 years after FDA classified all other dental fillings except this controversial one, 15 years after winning a mandamus based on exhaustion of remedies, ten years after promising in writing to classify mercury amalgam, five years after a sequence of meetings began between plaintiffs and FDA officials that have continued year after year, five years after promising a House committee it will classify, two years after promising a Senate confirmations committee it will classify, two years after plaintiff Consumers for Dental Choice filed a sequence of petitions for FDA to act, one year after two Scientific Advisory Committees voted decisively that FDA's claim of mercury amalgam's safety is mistaken, ten months after FDA conceded to the Court of Appeals that it does not know if amalgam is safe or unsafe FDA refuses to classify mercury amalgam.

[Related Litigation Complaint at 19]

6. On May 30, 2008, Attorney Brown signed a settlement agreement on behalf of Plaintiffs. Under the terms of the settlement agreement in the Related Litigation, Defendants agreed that FDA would "complete the classification process for encapsulated amalgam alloy and dental mercury referenced in 73 Fed. Reg. 22877 [21 CFR 872] (Apr. 28, 2008) by July 28, 2009." Under the compulsion of litigation, FDA had finally agreed to classify dental amalgam.

7. On July 25, 2009, many of the Plaintiffs herein submitted a citizen's petition to FDA for rulemaking (the "Citizens' Petition"). The Citizens' Petition requested, *inter alia*, that FDA:

> (1) Formally ban the use of encapsulated mercury fillings as a dental restorative material pursuant to section 516 of the Medical Device Amendments of 1976 (21 U.S.C. 360f) and 21 C.F.R. 895. The risk of illness or injury associated with the use of dental mercury presents an unreasonable, direct and substantial danger to the health of dental patients as well as dental personnel. Mercury fillings potentially endanger the health of individuals who have been or will be exposed to dental mercury.

4

(2) Alternatively, place encapsulated mercury fillings into Class III pursuant to section 513(3) of the Act (21 U.S.C. 360 c(e)) and 21 CFR 860, and seek strict proof of safety and effectiveness.

(3) If the FDA decides to place encapsulated mercury fillings into Class III, FDA should place restrictions (not special controls) on the use of this material in young children, women and particularly women of childbearing age, males, patients with compromised kidney, immune, and neurological function, those who are hypersensitive to mercury, those who test positive for apolipoprotein E4 or coproporphyrinogen oxidase (CPOX4), and other persons within susceptible subpopulations as described herein. Neither "Class II controls" nor "Special Controls" can accomplish a reasonable assurance of safety for all sectors of our general population. Reasonable assurance of safety can only be achieved by abolishing the use dental amalgam or by placing it into Class III.

(4) Under any of the foregoing alternatives, to require that an environmental assessment be required by manufacturers pursuant to 21 CFR 25.40.

8. FDA ignored the July 2009 Petition and entered its Final Rule on August 4, 2009, determining that encapsulated mercury fillings should be classified as a Class II device and essentially finding that mercury fillings are safe.

9. On September 3, 2009, Attorneys James M. Love and Robert E. Reeves filed on behalf of certain Petitioners a Petition for Reconsideration of FDA's Final Rule (the "Reconsideration Petition") classifying dental amalgam fillings into Class II in FDA Docket No. FDA-2008-N-0163. The Reconsideration Petition sought similar relief to that requested in the Citizens' Petition. The Reconsideration Petition identified and described 29 fundamental flaws with the FDA's Final Rule.

10. In September 2009, Dr. Richard Edlich independently submitted a Petition for Reconsideration entitled "Banning Mercury Amalgam" similarly requesting that the Commissioner of the Food and Drug Administration ban the use of mercury amalgam in the United States (the "Edlich Petition").

11. On September 2, 2009, Attorney James Turner independently filed a Petition for Reconsideration (the "Turner Petition") on behalf of Karen Burns and others.

12. In response to these four petitions, FDA scheduled new Scientific Advisory Committee hearings for December 14-15, 2010. Still reeling from the adverse vote of the 2006 Scientific Advisory Committee members, FDA would not allow the 2010 Committee to vote on any issue. However, the comments of the 2010 Committee members echoed the comments of the 2006 Committee. A transcript of these public hearings was summarized by Attorneys Love, Reeves, and Turner and Plaintiff Dr. Edlich in a letter dated June 23, 2011, and addressed to Dr. Jeffrey Shuren, the Director of FDA's Center for Devices and Radiological Health. After reviewing dozens of comments by the Advisory Committee members, the letter concluded that "[i]t is obvious that FDA's position on dental amalgam has not received support from either of the FDA hand-picked Scientific Advisory Committees empaneled in 2006 or 2010." In his response to this letter, Dr. Shuren thanked the authors of the June 23 letter, characterizing the letter as a "detailed and accurate analysis of the record of the December 14-15, 2010, meeting of the Dental Products Panel." Dr. Shuren requested "continued patience."

13. On May 5, 2011, Dr. Shuren arrived for an FDA Town Hall Meeting in Orlando, Florida. The subject of amalgam fillings was very much in play, and Dr. Shuren promised an FDA response to the four Petitions before the end of that year. However, FDA has not responded to these Petitions in any way.

14. Over four years have passed since FDA received the aforementioned Petitions. Other than hold Scientific Advisory Committee hearings, FDA has not meaningfully responded to or taken action on any of the four Petitions in violation of the Administrative Procedure Act ("APA").

15. On March 7, 2013, some of the Plaintiffs filed a Request to the Commissioner of FDA for leave to supplement the 2009 Reconsideration Petition with additional recent science demonstrating the risks associated with dental amalgam (the "Supplemental Petition") in FDA Docket No. FDA-2008-N-0163. The purpose of filing this Petition was to update the administrative record with peer-reviewed science that had been published since September 2009 or that was otherwise omitted from the earlier Petitions. The Supplemental Petition reflected articles that convincingly demonstrated a causal relationship between mercury fillings and an array of serious health problems.

16. Since FDA received the 2013 Supplemental Petition, FDA has not meaningfully responded to or taken action with respect to Plaintiffs' request to supplement the 2009 Reconsideration Petition, in violation of the APA.

17. This Court should order the Defendant and the FDA to respond to the Citizens' Petition, the Reconsideration Petition, the Turner Petition, the Edlich Petition, and the Supplemental Petition without further unlawful delay.

## JURISDICTION

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1346 (United States as Defendant).

19. The relief requested is specifically authorized pursuant to 28 U.S.C. § 1651 (writs) and 28 U.S.C. §§ 2201-02 (declaratory relief). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 (declaratory judgments).

20. Plaintiffs have a right to bring this action pursuant to the APA, 5 U.S.C. §§ 551, *et seq.*, 702-706. Each Plaintiff has standing to bring the claims asserted herein by virtue of injuries that they have suffered that will or should be redressed by the relief sought in this

Complaint.

## VENUE

21. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant in this Action is considered to reside in the District of Columbia for purposes of this Action, as her official duties are performed in Washington, D.C.

22. Defendant Dr. Margaret A. Hamburg is sued in her official capacity as FDA Commissioner. As Commissioner, Dr. Hamburg bears ultimate responsibility for FDA's activities and policies. Dr. Hamburg and the Food and Drug Administration are collectively referred to herein as "FDA" or "the Agency."

## LEGAL BACKGROUND

23. Under the Administrative Procedure Act ("APA"), agencies are required to "give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(3).

24. The APA requires an agency to conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). "Prompt notice shall be given of the denial in whole or in part of a . . . petition . . . ." *See* 5 U.S.C. § 555(e).

25. The APA, 5 U.S.C. § 702, grants a right of judicial review to "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."

26. Courts "shall compel agency action unlawfully withheld or unreasonably delayed," (5 U.S.C. § 706(1)) and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts may only review a final agency action (5

U.S.C. § 704), and "agency action" includes a "failure to act." 5 U.S.C. § 551(13).

## STATEMENT OF FACTS

27.     Mercury fillings must be banned from the market (12 U.S.C. §360f) or classified in Class III. (12 U.S.C. §360c)  These fillings are not safe and should be removed from the market, just as every other mercurial medical device and substance has been.  At the very least, they should be placed in Class III so that the amalgam manufacturers are required to prove that they are safe.  Mercurial wound disinfectants are gone, mercurial diuretics are gone, mercury thermometers are gone, and so are all mercurial veterinary substances.  There is no magic that makes dental mercury safer than those obsolete products of the past.  In this era when the public is advised to be concerned about mercury exposure through fish consumption, the FDA should ban mercury fillings as the predominant source of mercury exposure in the general population.

28.     The aforementioned Petitions request that sales of dental amalgam be banned, or alternatively, be placed in FDA's Class III.  The many criticisms raised in these Petitions include the following: (1) FDA's Final Rule on the classification of dental amalgam is based on a superficial and inadequate review of the literature; (2) FDA fails to utilize a methodical analysis of the 'weight of evidence' of the toxicological literature; (3) FDA offers no detailed quantitative analysis of its toxicological database leading to the determination of a defensible regulatory reference exposure level; (4) FDA fails to utilize a methodical, transparent, and defensible quantification of exposure for comparison to that reference exposure level; (5) FDA makes no defensible attempt to compare the full range of mercury exposures across the entire amalgam-bearing U.S. population to regulatory reference exposure levels designed and intended to protect the general population; (6) FDA only considers exposures attributed to a maximum of ten filled teeth, when many people have eleven to twenty-five fillings; (7) the FDA omits to quantify the

proportion of the amalgam-bearing population that exceeds the EPA reference dose ("RfC") and the ATSDR minimum risk level ("MRL"), the two reference exposure levels that purportedly provide health protection to the non-occupationally exposed general population; (8) the FDA omits to quantify the exposure in children less than six years of age, an age group considered the most vulnerable to exposure and adverse effects and a population group that does, indeed, receive amalgam fillings; (9) FDA fails to standardize the internal doses associated with the RfC and MRL (and those from amalgam) to body weight due to the great disparity in body weights in the different age groups being considered; (10) the FDA fails to recognize or rectify the inadequacy and invalidity of the EPA RfC or the ATSDR MRL.

29. Pursuant to 21 C.F.R. § 10.30(e)(1), when a Citizens' Petition is submitted to FDA, FDA shall rule upon each petition considering: (1) available agency resources for the category of the subject matter, (2) the priority assigned to the petition considering both the category of subject matter involved and the overall work of the agency, and (3) time requirements established by statute.

30. Pursuant to 21 C.F.R. § 10.30(e)(2), "the Commissioner *shall* furnish a response to each petitioner within 180 days of receipt of the petition." The Commissioner is authorized to respond as follows: (1) approve the petition and take appropriate action thereon, (2) deny the petition, or (3) provide a tentative response indicating why the Agency has been unable to come to a decision on the petition, stating the "likely ultimate agency response." If providing a tentative response, FDA may specify when a final response may be furnished.

31. FDA has taken no action with respect to the aforementioned Petitions since receiving them. No interim response has been provided, nor has FDA provided a substantive

response to any of the items filed by Plaintiffs. As such, FDA has failed to fulfill the requirement of providing a response within 180 days.

32. Over fifty-six months have passed since FDA received the Citizens' Petition. To date, FDA has not directly responded to or acted in response to this Petition.

33. Over fifty-four months have passed since FDA received the Reconsideration Petition, the Turner Petition, and the Edlich Petition. To date, FDA has not directly responded to or acted on these Petitions. Similarly, almost one year has passed since FDA received the 2013 Supplemental Petition, and FDA has not directly responded to or acted on these Petitions.

34. The interests of Plaintiffs are being and will be adversely affected by FDA's continued failure to respond to the aforementioned Petitions. In particular, the FDA's unreasonable delay in responding to the Petitions injured the Plaintiffs by, *inter alia*, abridging their procedural right to petition a federal agency. FDA's unreasonable delay also directly harms Plaintiffs' rights by impeding their abilities as public interest groups and interested individuals to further facilitate public involvement in governmental decision-making and by foreclosing the statutory right that allows for public participation through these petitions. These and other injuries will be redressed if the Court grants the relief requested herein.

35. The Plaintiffs' interests are being adversely affected by FDA's continued failure to respond to the Petitions. The individual and organizational Plaintiffs in this action will continue to suffer an ongoing threat to their health and the health of their environment so long as FDA permits the use of dental amalgam to restore carious teeth.

36. The requested relief will redress this harm by requiring FDA to respond to the aforementioned Petitions and to: (1) prepare a response fulfilling FDA's statutory duties; and, (2)

provide a final agency action that Plaintiffs may challenge if they disagree with FDA's response, in whole or in part.

## CAUSE OF ACTION

37. Plaintiffs incorporate by reference all allegations contained in paragraph 1 through 36 herein.

38. The Administrative Procedure Act, 5 U.S.C. § 553(3), requires agencies to "give an interested person the right to petition for the issuance, amendment, or repeal of a rule." *See also* 5 U.S.C. § 551(4) (defining "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy"). The APA right to petition encompasses the right to petition for a new, revised, or final rule, or repeal thereof, concerning FDA's regulation of mercury fillings.

39. Upon receipt of an APA petition, the Commissioner and FDA have a duty to respond to the petitioners promptly. *See* 5 U.S.C. § 555(e) ("Prompt notice shall be given of the denial in whole or in part of a . . . petition . . . ."). Such response must be substantive, *i.e.*, it must either grant or deny the petition. *See id.*

40. The APA, 5 U.S.C. § 702, grants a right of judicial review to "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." Plaintiffs, including the named individuals, entities, and members of those entities, are adversely affected by FDA's past and continued failure to respond to the petitions filed by Plaintiffs.

41. The APA, 5 U.S.C. § 706(1), states that a reviewing court "shall" interpret statutes, and "compel agency action unlawfully withheld or unreasonably delayed." FDA's failure to respond to and take action on the petitions filed by Plaintiffs constitutes unlawfully withheld and unreasonably delayed agency action. *See id.*

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(1)     Declaring that Defendant has violated the Administrative Procedure Act by failing to respond to the petitions filed by Plaintiffs within a reasonable time;

(2)     Declaring that Defendant continues to be in violation of the Administrative Procedure Act by failing to respond within a reasonable time to the petitions filed by Plaintiffs;

(3)     Ordering Defendant to respond to the petitions filed by Plaintiffs as soon as reasonably practicable;

(4)     Retaining jurisdiction of this action to ensure compliance with its decree;

(5)     Awarding Plaintiffs' attorney fees and all other reasonable expenses incurred in pursuit of this action; and

(6)     Granting other such relief as this Court deems just and proper.

Respectfully submitted,

/s/ James S. Turner
James S. Turner, DC Bar #82479
Swankin & Turner
1400 16th Street, NW, Suite 101
Washington, DC 20036
202-462-8800